## Knina *v.* Levine & Son, Appellants.

*Brokers—Scrap-iron dealers—Commissions—Evidence—Admissibility of sales-slips—Best evidence.*

In an action of assumpsit to recover commissions earned in the sale of scrap-iron, it is proper to admit in evidence the record of cars, the number, etc., of materials purchased, furnished by one who was not a member of the firm from which the material was purchased, where supplementary proof is produced which connects the defendants with the information furnished.

It is also proper to admit in evidence the record of sales-slips of the company from which the scrap was purchased. While the earlier rule of evidence denied the admissibility of books of account,

in issues between third persons, the modern tendency is to widen the door to their admission. This grows out of the magnitude and complication of modern business. The books alone are not the only evidence which is available to show delivery and condition when received, but to-day they are usually the best available evidence of such facts. As the law always seeks the best evidence, so, when new and more certain methods of ascertainment and proof arise, the law moving forward and accommodating itself to the trade customs of the age it is serving, will make use of those means which trade itself has developed, as an aid to certainty in recording transactions as they occur.

Where a plaintiff contracted to furnish information as to a certain place where defendants could buy large quantities of scrap-iron and materials, and the name and address were given, it is immaterial that some of the scrap-iron sold to the defendants was not shipped from the place mentioned by the plaintiff.

Argued April 21, 1925. Appeal No. 148, April T., 1925, by defendants from judgment of C. P. Lawrence County, March T., 1921, No. 15, on verdict for plaintiffs in the case of Frederick Knina v. Jacob Levine and Charles Levine, Partners trading and doing business as Jacob Levine & Son. Before HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Assumpsit to recover commissions. Before EMERY, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for the plaintiff in the sum of $1,853.01, and judgment thereon. Defendant appealed.

*Error assigned,* among others, was the refusal of defendants' motion for judgment non obstante veredicto.

*J. Norman Martin,* of *Martin & Martin,* for appellant.

*Robert L. Wallace,* for appellee.—Record sales

books are admissible as evidence: William Zoller Co.
v. Hartford Fire Insurance Co., 272 Pa. 391.

OPINION BY TREXLER, J., July 9, 1925:

Knina, the plaintiff, convinced the jury that he had
a bargain with the defendants if he would direct them
to some place where they could purchase large quanti-
ties of scrap iron and scrap materials they would pay
him a commission, which commission in a subsequent
conversation was fixed at three and one-half per cent.
He showed that in pursuance of the information given
the defendants bought a large quantity of scrap from
the United States Aluminum Company, the corpora-
tion designated by him. There was sufficient evidence
to warrant the verdict for plaintiff but the defendants
complain that the proof offered was not proper.

The first objection is that the plaintiff was allowed
to testify that the record of the cars and numbers, etc.,
of the materials bought from the United States Alumi-
num Company was furnished to him by Mark Levine,
the objection being based on the fact that Mark Levine
was not a member of the firm of Jacob Levine & Son.
The court could not reject this testimony. Mark Le-
vine was in the office of the defendants when he gave
the information. It formed part of the plaintiff's
case. There was supplementary proof which con-
nected the defendants with the information furnished
for they, according to plaintiff's testimony, recognized
that they owed the commissions but owing to loss told
the plaintiff to wait for his money.

The second assignment is directed to the admission
of certain exhibits which consisted of sales slips of the
Aluminum Company. The records of the company
showed that there were certain shipping orders show-
ing a consignment of scrap iron to Jacob Levine &
Son. There were quite a large number of them and
in each one of them were contained the words "shipped

to Jacob Levine & Son." There were also records purporting to show the actual shipment of the cars. The witness who testified was the assistant auditor for the United States Aluminum Company and had the custody of the books and sales record of the scrap iron and scrap material during the time when these transactions occurred. The court, we think, was right in allowing this testimony to go in. This company was a large producer of such materials as were handled in this case. It was impossible to call all the salesmen who made the individual sales lists in the record or to follow up each transaction by the person who actually handled the merchandise and made the records. There seems to be no doubt about it that these goods were actually shipped and received by some one. The pinch of the case was that the defendants denied any transaction with the Aluminum Company and stated that all the transactions were with Mark Levine. There were purchases of scrap admittedly made by the firm of Jacob Levine & Son, but these it is claimed were bought from Mark Levine who had purchased them from the Aluminum Company. The checks were made payable to Mark Levine who endorsed them over to the company. The strictness in regard to the admission of the records of memoranda made in the course of the business of large concerns has been greatly relaxed of late from the fact that it would be impossible in many cases to prove plaintiff's case and the expense involved would be too great. The sales invoices appeared to have been made contemporaneously with the sales. The original record was offered, that is the leaves or sheets from the loose-leaf book. The only objection to their admission was that they were not the best evidence. In the case of William Zoller v. Hartford Fire Insurance Company, 272 Pa. 391, our Supreme Court took occasion to say that "while the earlier rule denied the admissibility of books of ac-

count, in issues between third persons, the modern tendency is to widen the door to their admission. This grows out of the magnitude and complication of modern business.......Their books are not alone the only evidence which is available to show delivery and condition when received, but in these days they are usually the best available evidence of such facts. As the law always seeks the best evidence, so, when new and more certain methods of ascertainment and proof arise, the law moving forward with and accommodating itself to the trade customs of the age it is serving, will make use of those means, which trade itself has developed, as an aid to certainty in recording transactions as they occur. Pennsylvania has recognized the need of easier methods of proof than the common law afforded, as to matters in which carriers are concerned, by the Act of May 25, 1897, P. L. 82, 1 Stewart's Purdon 619." See Laginsky v. McCullough, 280 Pa. 286; Specktor v. Victory Ins. Co., 282 Pa. 429; Lowenstein v. Greenbaum, 65 Pa. Superior Ct. 19; John Wanamaker v. Chase, 81 Pa. Superior Ct. 201; Ehmling v. D. L. Ward Co., 279 Pa. 527.

The next assignment is directed to the fact that some of the material sold by the United States Aluminum Company to the defendants was shipped from other plants than the plant at New Kensington, Pa. This hardly merits any notice. According to the version of the plaintiff he gave the place where defendants could buy large quantities of scrap iron and materials and the name and address were given as that of New Kensington. It would at best have been a question for the jury to pass upon whether the commission was narrowed down to the material obtained at a particular place or whether it applied to goods purchased from the Aluminum Company irrespective of the particular plant. The claim of the plaintiff is premised upon a record of the merchandise that was purchased

by Jacob Levine & Son as he alleges and the record being given to him from time to time by Mark Levine. so according to plaintiff's narration as to the course of conduct of the parties, all these items covered by the information transmitted by Mark Levine were embraced in the sum upon which he was entitled to commission, otherwise there would be no reason why this information should have been given to him.

The court told the jury that plaintiff testified that one of the defendants had furnished him with certain car numbers. This is a mistake. Mark Levine gave him the car numbers and he was not a defendant. This was a small slip of the tongue. At the defendant's suggestion he corrected the error by saying that he was mistaken. We quote it: "We were in error with reference to that. That is correct [the statement that Mark Levine gave the plaintiff numbers] as we now recall the testimony and of course if it was Mark Levine furnished them that is not binding upon either of the defendants." This was sufficient.

The plaintiff inadvertently called Charles Levine as his own witness. The defendant took the position that if plaintiff's own witness testified to a fact, that settled it, and put a point to the court to the effect that since the witness had testified that Jacob Levine & Son had never purchased any material from the United States Aluminum Company that fact was settled and had to be regarded as proved. The affirmance of this point would, of course, have been equivalent to binding instructions. The court affirmed the point with the qualification that the plaintiff is bound to the extent that he cannot discredit or contradict his testimony. We think that was a correct statement of the law. Plaintiff is only bound if the testimony is allowed to stand alone and unchallenged. It would be drawing too fine a line to hold that the mere inadvertence of the counsel to state that he called a witness for cross-

examination would bind him hard and fast so that he could not proceed any further concerning the subject of inquiry, and that is not the law: Lewis v. Baker, 162 Pa. 510. Presumably this defendant was a hostile witness, being an adverse party.

We see no merit in the contention that the furnishing of the information to the defendants where they could buy was not a proper consideration for the contract. We think it was. There are various avenues of trade where persons make their livelihood through the disclosure of information. We know of no case that would hold that such giving of information to the advantage of a purchaser cannot be made the foundation of a contract to pay commissions.

We think the case was properly submitted to the jury who were the judges of the facts. There was abundant evidence, if believed, to show that the interjection of Mark Levine as the third party in the case was merely an attempt to evade the payment of the commission. We do not say that such is the case but the jury could come to that conclusion.

All the assignments of error are overruled and the judgment is affirmed.